UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE LEE WIMBERLY,

        Petitioner,

                                Civil Case No. 18-11953
v.                             Honorable Linda V. Parker

DUNCAN MACLAREN,[1]

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS; GRANTING A CERTIFICATE OF APPEALABILITY; AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Willie Lee Wimberly ("Petitioner"), through attorney S. Allen Early, has

filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner

challenges his Michigan state court convictions for two counts of assault with

intent to commit murder in violation of Michigan Compiled Laws § 750.83.  For

the following reasons, the Court is denying the petition.

---

[1]  The Court is amending the case caption to reflect the proper respondent in this case, Duncan MacLaren, the warden of the prison where Petitioner is currently incarcerated. *See* Rule 2(a) of the Rules Governing § 2254 Cases.

# I.    Background

Petitioner was convicted following a jury trial in the Circuit Court for

Wayne County, Michigan.  The Court recites verbatim the relevant facts from the

Michigan Court of Appeals' opinion:

> Defendant was convicted of aiding or abetting the shooting assaults of
> Brendon Charles and Seylon Dudley during the early morning hours
> of January 1, 2013, in an apparent road-rage incident after Charles and
> Dudley left the MGM Grand Casino in Detroit.  Charles and Dudley
> left the casino in a Range Rover driven by Charles.  Defendant, who
> had also been at the casino, was driving a Ford Expedition with two
> passengers, one of whom was Steven Smith–Rush ("Rush").  After an
> altercation between the drivers of the two vehicles while leaving the
> casino, the Expedition followed the Range Rover onto the I–94
> freeway, eventually pulled alongside the vehicle, and then multiple
> gunshots were fired from the Expedition into the Range Rover.
> Charles and Dudley were both struck by gunfire.
>
> Defendant and Rush were arrested later in January 2013, but Rush
> was initially charged only with accessory after the fact.  Charles was
> murdered the day before a joint preliminary examination for
> defendant and Rush was to be held on January 30, 2013.  When the
> preliminary examination ultimately concluded in April 2013,
> defendant was bound over for trial on two counts of assault with intent
> to commit murder and one count of felony-firearm.  The district court
> found insufficient credible evidence to add assault charges against
> Rush, but bound Rush over for trial on charges of accessory after the
> fact and giving a false statement to the police.  Rush later entered a
> guilty plea to the latter charge.  Defendant testified at trial and
> admitted driving the Expedition when his passengers fired gunshots
> into the Range Rover, but argued that he was merely present in the
> vehicle, was unaware that his passengers intended to fire gunshots
> into the Range Rover, and did nothing to aid or assist the passengers
> in the shooting assault of the two victims.  The prosecution presented
> evidence linking defendant to an attempt to bribe Charles if he did not
> testify at the preliminary examination, and linking him to Charles's
> murder the day before the scheduled preliminary examination.  The

jury convicted defendant of two counts of assault with intent to commit murder, but acquitted him of the felony-firearm charge.

*People v. Wimberly,* No. 321490, 2015 WL 6161545, at *1 (Mich. Ct. App. Oct. 20, 2015). These facts are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F. 3d 410, 413 (6th Cir. 2009)

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence on direct appeal. *Wimberly*, 2015 WL 6161545. The Michigan Supreme Court denied Petitioner leave to appeal. *People v. Wimberly*, 890 N.W. 2d 974 (Mich. 2017).

Petitioner asserts the following grounds in support of his request for federal habeas relief:

I.    Petitioner Willie Wimberly was denied a fair trial when the trial court denied his Sixth Amendment right to retained counsel of his choice.

II.    Petitioner Willie Wimberly is entitled to a new trial as he was denied effective assistance of counsel.

III.    Petitioner Willie Wimberly is entitled to be resentenced because the facts in support of some of his offense variable scores and facts in support of departures reasons were not found by the jury to be proven beyond a reasonable doubt, and because the trial court improperly departed from the guidelines and the mistake in scoring the guidelines invalidates this departure and the departure is unreasonable because it is based on incorrect guidelines and because the correct guideline range is in a completely different cell which does not overlap with the erroneous guideline range and the Court of Appeals decision is in conflict with the Supreme Court decision of *Gall v. United States* and *Rita v. United States* and denies petitioner due process.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

govern this case.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  AEDPA

provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme Court

cases]' or if it 'confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme] Court and nevertheless arrives at a result different from

[that] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*,

535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

habeas court to 'grant the writ if the state court identifies the correct governing

legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of [the] petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n.7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

### III.    Discussion

### A. The Concurrent Sentencing Doctrine

Respondent urges the Court invoke the "concurrent sentence" doctrine and not review Petitioner's claims because Petitioner is serving a sentence of life imprisonment without parole for the first-degree murder conviction he received in connection with Mr. Charles' death and for which another judge in this District already has denied him habeas relief. *See Wimberly v. Warren*, No. 2:18-11011, 2018 WL 6178999 (E.D. Mich. Nov. 27, 2018) (Borman, J.).

The concurrent sentence doctrine allows a federal court to "decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Winn v. Renico*, 175 F. App'x 728, 731 (6th Cir. 2006) (citing *United States v. Jeter*, 775 F.2d 670 (6th Cir. 1985), *cert. denied* 475 U.S. 1142 (1979)). The Sixth Circuit "has been … hesitant to apply this doctrine[,]" and "has invoked it [only] when there is no possibility of adverse 'collateral consequences' if the convictions stand." *Id.* at 732; *see also Groves v. Meko*, 516 F. App'x. 507, 508 (6th Cir. 2013) (quoting *Dale v. Haeberlin*, 878 F.2d 930, 935 n. 3 (6th Cir. 1989)) ("The concurrent sentencing doctrine is a discretionary one, and courts 'are admittedly hesitant to apply [it].'").

Respondent fails to show the lack of collateral consequences attaching to Petitioner's first-degree murder conviction. *See Pillette v. Berghuis*, 408 F. App'x. 873, 886 n. 8 (6th Cir. 2010). Notably, although Petitioner's first-degree murder conviction has been affirmed on direct appeal and he has been denied habeas relief, he still has the ability to challenge that conviction in the state courts via a post-conviction motion for relief from judgment under Michigan Court Rule 6.500. For that reason, the Court declines to invoke the concurrent sentence doctrine.

## B.     Petitioner's Counsel of Choice Claim

In his first ground for relief, Petitioner argues that his right to counsel of choice was violated when the state court denied his motion to adjourn the trial and substitute counsel with his third retained attorney.  Petitioner moved to substitute counsel and delay the proceedings three days before the first day of trial and, again, on the first day of trial.

The Michigan Court of Appeals rejected Petitioner's claim, reasoning:

> In this case, defendant satisfied the first factor by asserting a constitutional right to retain counsel of his choice.  But defendant did not establish a bona fide dispute with his retained counsel over trial strategy at the time of the motions, but rather expressed general dissatisfaction with defense counsel's performance and counsel's alleged lack of communication regarding the development of a general defense of innocence.  Furthermore, considering that the trial proceedings were previously delayed because of a mid-trial defense request for a competency examination, which the trial court granted, that further delay occurred as a result of the trial court allowing defendant's second retained attorney to enter an appearance as defendant's counsel of choice, and that defendant waited until just before trial to attempt to substitute his third counsel of choice, the trial court's conclusion that defendant was engaging in delay tactics was reasonable and found support in the record.

> Under the circumstances, the trial court decision not to allow another adjournment for defendant to proceed with another retained attorney was not an abuse of discretion.  Balancing defendant's right to counsel of his choice against the public interest in the prompt and efficient administration of justice, defendant's Sixth Amendment right to counsel of choice was not violated.

*Wimberly*, 2015 WL 6161545, at * 2.  The state court's decision was neither

contrary to nor an unreasonable application of clearly established Supreme Court

precedent.

The Sixth Amendment right to the assistance of counsel does not guarantee a

criminal defendant representation by a particular attorney.  *Serra v. Mich. Dep't of

Corr.*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Caplin & Drysdale v. United

States*, 491 U.S. 617, 624 (1989)).  Nevertheless, "[a] criminal defendant who

desires and is financially able to retain his own counsel 'should be afforded a fair

opportunity to secure counsel of his own choice.'"  *Id.* (quoting *Powell v.

Alabama*, 287 U.S. 45, 53 (1932)).  Indeed, "'the Sixth Amendment guarantees a

defendant the right to be represented by an otherwise qualified attorney whom that

defendant can afford to hire, or who is willing to represent the defendant even

though he is without funds.'"  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144

(2006) (quoting *Caplin & Drysdale*, 491 U.S. at 624-25).

However, the right to counsel of one's choice is a qualified right.  *Serra*, 4

F.3d at 1348 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)).  Stated

differently, the right to counsel of one's own choice "is not absolute."  *Wilson v.

Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985) (citations omitted).  "Although a

criminal defendant is entitled to a reasonable opportunity to obtain counsel of his

choice, the exercise of this right must be balanced against the court's authority to

control its docket." *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984); *see also Gonzalez-Lopez*, 548 U.S. at 151-52) ("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them … We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.") (internal citations omitted). Finally, "the right to counsel of choice may not be used to unreasonably delay trial." *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir. 1981).

Several factors are relevant when reviewing a motion for substitution of counsel: "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012). "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id.* at 663-64.

Petitioner's request for a continuance to substitute in retained counsel was untimely because it was made on the eve of trial. Petitioner has offered no reason to the state courts or to this Court for why he did not attempt to retain his third

counsel earlier. The Sixth Circuit has noted that "when 'the granting of the defendant's request [for a continuance to obtain new counsel] would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference.'" *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008) (quoting *United States v. Pierce*, 60 F.3d 886, 891 (1st Cir.1995)). The Sixth Circuit has rejected similar requests for the replacement of counsel as being untimely. *See United States v. Trujillo*, 376 F.3d 593, 606-07 (6th Cir. 2004) (motion for substitution of counsel was untimely, coming only three days prior to the start of the trial); *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996) (motion to continue to obtain new counsel untimely when it was made the day before trial); *United States v. Watson*, 620 F. App'x. 493, 501 (6th Cir. 2015) (request for new counsel made 19 days before trial untimely); *United States v. Fonville*, 422 F. App'x. 473, 480 (6th Cir. 2011) (request for new counsel made less than a month and a half before trial not timely); *United States v. Chambers*, 441 F. 3d 438, 447 (6th Cir. 2006) (no abuse of discretion to deny request for new counsel made a month and a half before trial). Petitioner's request for a continuance to obtain new counsel three days before trial was untimely, particularly where he had several opportunities prior to trial to bring his dissatisfaction with his second attorney to the trial court's attention. *Whitfield*, 259 F. App'x. at 834.

10

Moreover, this was not the first time Petitioner moved for substitution of counsel. Petitioner had already discharged his first attorney when he sought three days before trial and then on the day of trial to discharge his second attorney. The proceedings already had been delayed due to Petitioner replacing his first attorney. Permitting him to discharge his second attorney to hire a third one would have caused even further delay. Thus, the trial court did not err in denying Petitioner's request to discharge his second attorney.

Second, Petitioner did not establish good cause for substitution of counsel, where he failed to show that the conflict between himself and his attorney "was so great that it resulted in a total lack of communication preventing an adequate defense." *Jennings*, 83 F. 3d at 149. Petitioner presented only general and vague complaints about his second attorney's performance. The record does not reflect that this attorney was unprepared to proceed with trial or that there had been a complete breakdown in Petitioner's and his counsel's communications.

The Court therefore concludes that Petitioner is not entitled to habeas relief on his counsel of choice claim.

## C.   Petitioner's Ineffective Assistance of Counsel

Petitioner claims that he was denied the effective assistance of trial counsel. A defendant must prove two things to demonstrate ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). When evaluating counsel's performance under *Strickland*'s first step, the reviewing court must apply a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Stated differently, the defendant is required to overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Id.* at 689. Courts must "not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors." *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (internal quotation marks and citation omitted).

"[D]oubly deferential judicial review" applies to a *Strickland* claim evaluated under § 2254(d)(1)'s standard. *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009). On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard

12

was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Further, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Petitioner first argues that his trial counsel was ineffective for failing to discuss trial strategy with him and investigate the case. According to Petitioner, as a result of this failure, trial counsel represented in his opening statement that the evidence would show that Petitioner was not the driver of the vehicle involved in the shooting incident and that the shooting was related to illegal drugs. Petitioner claims counsel's opening remarks were defective because they were at odds with evidence at trial indicating that Petitioner was, in fact, the driver of the vehicle, as well as Petitioner's own testimony, in which he admitted driving the vehicle but that he did not know that the vehicle's occupants possessed guns and would shoot the victims.

The Michigan Court of Appeals rejected Petitioner's claim, reasoning:

> The nature and scope of defense counsel's pretrial investigation is not apparent from the record. However, defense counsel would have had access to the same information that was available to defendant's first attorney. The record also indicates that defendant testified at trial against the advice of counsel. Defense counsel's opening statement reflects a strategy of attacking the sufficiency and

13

quality of the prosecution's evidence.  Defense counsel argued that the prosecutor would not be able to prove that the gunshots were fired from the same vehicle that cut off the Range Rover outside the casino, *but further argued* that even if it was the same vehicle, the prosecutor would not be able to show that defendant did anything more than drive the vehicle. Defense counsel also asserted that the prosecutor was going to offer Avantis Parker's testimony as a "desperate" measure, because the prosecutor knew that proof beyond a reasonable doubt was lacking, but that Parker was a drug dealer, armed robber, and murderer who had no credibility.

Although there are times when a defense attorney serves the client's interest by making a concession in opening statement, defendant has failed to establish that defense counsel engaged in unsound trial strategy by proposing to hold the prosecution to its burden of proof, even if that strategy was not specifically discussed with defendant before trial.  Although defendant asserts that defense counsel's opening statement put him in a position of having to admit that certain statements were not true, defendant cites no factual support for this argument.  A defendant may not leave it to this Court to search for factual support for a claim.

In addition, defense counsel appropriately modified his strategy in closing argument to conform to defendant's testimony that he was merely present.  Counsel asserted that defendant could have declined to testify and held the prosecution to its obligation to prove its case, but explained that defendant "couldn't sit there and let you labor under the assumption that he was not there.  He needed to tell you what happened."  Considering counsel's strategy in light of the record as a whole, defendant has not overcome the presumption that counsel's strategy was objectively reasonable, or shown that he was prejudiced by the strategy employed.  The fact that a strategy does not work does not establish ineffective assistance of counsel.

*Wimberly*, 2015 WL 6161545, at *9 (internal citations omitted) (emphasis in

original).  The state court's decision was not an unreasonable application of the

*Strickland* standard.

14

As an initial matter, Petitioner fails to offer any evidence suggesting that his second attorney did not investigate the facts of the case or was unprepared for trial. Petitioner does not identify evidence that his attorney failed to uncover or a defense that he failed to develop. Moreover, Petitioner's trial attorney was his second attorney and counsel may have relied on the investigation of Petitioner's former counsel. The Sixth Circuit "has recognized that a defendant is not denied effective assistance of counsel even if his attorney conducts no independent investigation of his own but merely receives and relies upon a prior attorney's work product in going to trial." *Ray v. Rose*, 535 F.2d 966, 975 (6th Cir. 1976).

Petitioner also fails to show that trial counsel's opening statement was deficient. Counsel did suggest during his opening statement that the prosecutor would be unable to show that the vehicle involved in the shooting was the same vehicle involved in the earlier confrontation at the MGM Grand Casino. However, counsel also stated that even if Petitioner was the driver of the vehicle involved in the shooting, the evidence would show that he had no knowledge that his passengers were armed with weapons or would shoot at the victims and that he was merely present at the scene. (3/4/14 Trial Tr. at 113-21, ECF No. 5-9 at Pg ID 743-51.)

Petitioner argues that it was unreasonable for defense counsel to argue that he was not the driver of the vehicle involved in the shooting because the valet at

the casino testified that Petitioner got into the vehicle shortly before. However, there was evidence from which counsel could have argued that the vehicles were not the same. When Officer Joseph White interviewed Mr. Charles' companion, Ms. Dudley, after the shooting, Ms. Dudley did not identify the make or model of the "dark SUV" involved in the shooting. Further, Ms. Dudley was not able to provide a description of the SUV's occupants, other than that she saw two black males who were approximately thirty years old. (3/5/14 Trial. Tr. at 70-73, ECF No. 5-10 at Pg ID 881-883.) Although Ms. Dudley believed that the vehicle was the same vehicle involved in the earlier altercation, she told Officer White that she purposefully kept her eyes directed straight ahead when the vehicle pulled up alongside the vehicle in which she and Mr. White were riding because she did not want to make eye contact with the occupants. (*Id.* at 77-78, Pg ID 887-88.)

A defense attorney may, in the exercise of his or her professional judgment, argue alternative or inconsistent theories of defense without engaging in ineffective assistance of counsel. *See Brown v. Dixon*, 891 F.2d 490, 494-95 (4th Cir. 1989) (holding that "neither the presentation of inconsistent defenses—that [the petitioner] either did not commit the murders or did so while drunk … deprived [the petitioner] of effective assistance of counsel"); *see also Singleton v. Lockhart*, 871 F.2d 1395, 1400 (8th Cir. 1989) ("There is nothing unusual about arguing inconsistent or alternative theories of defense."). Counsel was not ineffective in

seeking to present alternate defense theories that could exonerate Petitioner, even if counsel's theory that the vehicle involved in the earlier altercation was not involved in the actual shooting seemed implausible in hindsight.

Counsel also was not ineffective for abandoning the defense that Petitioner was not present at the time of the shooting, as Petitioner decided to testify against the advice of counsel (3/11/14 Trial Tr. at 41, ECF No. 5-13 at Pg ID 1318) and then admitted to driving the vehicle involved in the shooting. While defense counsel's failure to fulfil an important promise in an opening statement may sometimes amount to deficient performance, *see English v. Romanowski*, 602 F.3d 714, 729 (6th Cir. 2010), counsel's decision to abandon a defense raised in his or her opening statement is not ineffective assistance if the evidence presented at trial no longer supports such a defense. *See, e.g., King v. Westbrooks*, 847 F.3d 788, 796-97 (6th Cir. 2017). "An attorney's failure to fulfill promises made in opening statement is not often a successful basis for an ineffective assistance claim." *Hampton v. Leibach*, 290 F. Supp. 2d 905, 928 (N.D. Ill. 2001), *aff'd*, 347 F.3d 219 (7th Cir. 2003). This is because "[t]he decision to change strategy during trial is often forced upon defense counsel by the vagaries of the courtroom arena." *Id*.

Petitioner argues that trial counsel's opening statement was defective because it opened the door for Avantis Parker's testimony that Petitioner was

involved in Mr. Charles' murder. The Michigan Court of Appeals rejected this

claim, explaining:

> We also reject defendant's argument that defense counsel's opening statement was ineffective because it opened the door to Parker's testimony regarding defendant's involvement in Charles's murder, thereby leading to the consciousness-of-guilt instruction. However, the record discloses that regardless of defense counsel's opening statement, the prosecutor intended to use Parker's testimony to establish, at a minimum, defendant's involvement in trying to bribe Charles to keep him from testifying against defendant. That evidence alone would have supported a consciousness-of-guilt instruction. In addition, it is apparent from defense counsel's opening statement that he wanted to show Parker's involvement in Charles's murder to further attack his credibility. Counsel later elicited testimony from Parker that he hoped that his testimony in this case would help him at sentencing for his second-degree murder conviction related to Charles's murder. Counsel's decision to pursue that subject matter was clearly a matter of trial strategy, and, while perhaps a close call, defendant has not overcome the strong presumption that counsel exercised reasonable professional judgment.

*Wimberly*, 2015 WL 6161545, at *10 (citation omitted). The state court did not

unreasonably apply *Strickland*'s standard because trial counsel's argument was

part of a legitimate strategy to cast doubt on Mr. Parker's credibility. *See, e.g.,*

*Campbell v. United States*, 364 F.3d 727, 734-35 (6th Cir. 2004) (counsel's

performance in eliciting prejudicial testimony from three government witnesses on

cross-examination was not deficient, as required to support claim of ineffective

assistance; because questions asked on cross examination were part of legitimate

strategy to cast doubt on witnesses' testimony).

Petitioner next contends that counsel was ineffective for failing to ask the trial court to re-read the instruction on aiding and abetting when the jurors asked whether there was a distinction between the principal and an accessory to the crime. Petitioner also argues that counsel should have asked the trial court to re-read the instructions on inducement and mere presence as well. In response to the jury's question, the trial court suggested re-reading the aiding and abetting instruction and the prosecutor agreed. Defense counsel argued that the answer to the jury's question should be "no" and that the aiding and abetting instruction did not answer the jurors' question.

The Michigan Court of Appeals rejected this claim, reasoning:

> Lastly, defendant argues that defense counsel's performance was deficient because he did not ask the trial court to reread the aiding and abetting jury instructions in response to a jury question during deliberations. We disagree. Counsel did not object to having the court reread the aiding and abetting instructions, but appropriately observed that it would not answer the jury's question. The jury only inquired whether there is a difference between a person who is guilty as an aider or abettor, or as a direct participant. Defendant does not challenge the trial court's response, which accurately informed the jury that there is "no difference" between the two. The jury's limited question did not express confusion regarding what constitutes aiding or abetting in the first instance. Defense counsel was not ineffective for not insisting that the trial court reread jury instructions that would not have specifically answered the jury's question.

*Wimberly*, 2015 WL 6161545, at *10. This also was not an unreasonable application of the *Strickland* standard.

To prevail on this claim, Petitioner must show that trial counsel's failure to request re-instruction of the jury, in response to their inquiry, was unreasonable. *See Grayson v. Thompson*, 257 F.3d 1194, 1223-24 (11th Cir. 2001). Petitioner was not ineffective for failing to ask the trial court to re-read the aiding and abetting instruction because the court's response to the jurors adequately answered their question.

Petitioner next contends that trial counsel was ineffective for failing to call two "alibi" witnesses to testify that he was not the shooter: Lawrence Mathews and Tisha Austin. Petitioner submitted affidavits from both potential witnesses in support of his direct appeal. (*See* ECF No. 5-17 at Pg ID 1711-15.) In her affidavit, Ms. Austin states that she was on the telephone with Petitioner during the incident and that he subsequently came to her house and told her his co-defendants had shot at some people on the freeway. (*Id.* at 1711-12.) Mr. Mathews, who was in Petitioner's vehicle when the shooting incident occurred, states in his affidavit that he offered to testify at Petitioner's trial that Petitioner did not participate in the shooting and did not help in any way.[2] (*Id.* at 1715.)

---

[2] Mr. Mathews was not charged with Petitioner and Steven Smith-Rush in connection with the shooting incident and it does not appear that charges were ever brought against him. However, Mr. Mathews was charged and tried with Petitioner in connection with Mr. Charles' murder and was found guilty of first-degree murder and felony firearm. *See People v. Mathews*, Case No. 13-001535-FC (Washtenaw Cty. Cir. Ct.) Mr. Mathews is serving a life sentence in connection with his convictions.

The Michigan Court of Appeals rejected Petitioner's claim, providing the following reasoning:

> [A]fter reviewing the affidavits of the alleged "alibi" witnesses that were filed by defendant in support of his motion to remand, we conclude that remand for a *Ginther* hearing[3] is not warranted because we are not persuaded that the affidavits establish a reasonable probability that the result of the trial would have been different if the witnesses had testified at trial consistent with their affidavits. None of the affiants could have supported an alibi defense because they do not place defendant elsewhere than at the scene of the shooting. The affidavits of Tisha Austin and Lawrence Mathews might have corroborated portions of defendant's trial testimony regarding his version of the circumstances of the shooting. But Austin's averments about her phone conversation with defendant while he was driving the Expedition are not substantial enough to demonstrate a reasonable probability of a different outcome. Apart from the fact that her relationship with defendant affected her credibility, Austin was not an eyewitness and would not be able to explain how the vehicles could have become stuck together during the shooting, and then become unstuck as defendant claimed in his testimony. And while Mathews averred that he fired the gunshots at the Range Rover, the prosecutor's aiding and abetting theory did not require proof that defendant was a shooter. In addition, defense counsel could not have compelled Mathews to testify, and Mathews did not indicate in his affidavit that he would have been willing to incriminate himself by testifying to the alleged facts at the time of defendant's trial.

*Wimberly*, 2015 WL 6161545, at * 16 (internal citations omitted). Under § 2254(d)(1)'s "doubly deferential" standard, this Court cannot conclude that the state court unreasonably applied *Strickland*'s standard.

---

[3] *People v. Ginther,* 390 Mich. 436, 212 N.W. 2d 922 (1973).

Ms. Austin was not present when the crime took place and therefore could not have exonerated Petitioner. Moreover, her testimony, as well as Mr. Mathews' testimony, would have confirmed that Petitioner was present during the shooting. As the Michigan Court of Appeals explained, the prosecutor presented an aiding and abetting theory which did not require proof that Petitioner was a shooter. Further, Mr. Mathews would have had to incriminate himself had he testified at Petitioner's trial and could have invoked his Fifth Amendment right against self-incrimination if called to testify. In light of this fact, defense counsel could have reasonably determined that it would not be in Petitioner's best interest to call him as a defense witness. *See e.g. Davis v. Lafler*, 658 F.3d 525, 537 (6th Cir. 2011).

For these reasons, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

### D. Petitioner's Sentencing Claim

In his final claim, Petitioner contends that his Sixth Amendment right to a jury trial was violated when the trial court scored several of the offense variables of the sentencing guidelines based on facts that had neither been submitted to a jury and proven beyond a reasonable doubt nor admitted to by Petitioner. Petitioner also argues that the trial court erred in departing above the sentencing guidelines range.

It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Thus, to the extent Petitioner is claiming that the state trial court misapplied the Michigan Sentencing Guidelines, the claim is not cognizable on federal habeas review because it is basically a state law claim. *See Howard v. White*, 76 F. App'x. 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016). Further, a sentence that is within the statutory limits, like Petitioner's, *see* Mich. Comp. Laws § 750.83, is generally not subject to habeas review. *See Miller v. Winn*, No. 18-1540, 2018 WL 5849899, at *3 (6th Cir. Aug. 27, 2018) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948)); *Cooper v. Haas*, No. 17-1235, 2018 WL 1224451, at *5 (6th Cir. Jan. 9, 2018) (same).

Petitioner relies on the Supreme Court's decision in *United States v. Alleyne*, 570 U.S. 99 (2013), to argue that the state court's sentence violated his Sixth Amendment right to a jury trial. In *Alleyne*, the Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Id.* at 103. Petitioner also cites the Michigan Supreme Court's decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), in which the Court held that, in light of *Alleyne*, Michigan's sentencing scheme was unconstitutional to the extent that it required judicial fact-finding to score offense variables that

mandatorily increase the floor of the guidelines' minimum sentencing range. *Id*. at 506.

The state trial court, however, departed upwards from the sentencing guidelines when sentencing Petitioner. As such, the holdings in *Alleyne* and *Lockridge* are inapplicable to his case. *See Cooper*, 2018 WL 1224451 at *5 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000) ("We should be clear that nothing … suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute.")); *see also United States v. Bell*, 795 F.3d 88, 104 (D.C. Cir. 2015) (citing *United States v. Jones*, 744 F.3d 1362, 1369 (D.C. Cir. 2014) (it is "the settled rule that enhancing a sentence within the statutory range based on facts found by the judge, as opposed to the jury, does not violate the Sixth Amendment")). Because *Alleyne* does not prohibit an upward departure from the sentencing guidelines range, Petitioner's sentencing claim lacks merit.

Petitioner also cites to *Gall v. United States*, 552 U.S. 38 (2007), and *Rita v. United States*, 551 U.S. 338 (2007), in connection with his sentencing claim. He fails to articulate, however, how his sentence is contrary to or an unreasonable application of either of these Supreme Court decisions. Petitioner did not mention either Supreme Court decision in his state court filings. (*See* ECF No. 5-17.)

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005).

For these reasons, the Court concludes that Petitioner is not entitled to habeas relief on his sentencing claim.

## IV.    Conclusion

For the reasons set forth above, the Court is denying Petitioner's application for the writ of habeas corpus under § 2254.  In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability ("COA").  *See* 28 U.S.C. § 2253(c)(1).

To obtain a COA, a habeas petitioner must "ma[k]e a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this showing, the petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks and citation omitted).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  *Id.* at 484.

The Court does not believe that Petitioner satisfies the threshold for entitlement to a COA with respect to his sentencing claim and claim concerning the retention of counsel of his choice. However, the Court does believe that reasonable jurists could debate whether Petitioner was denied the effective assistance of counsel with respect to his trial counsel's (1) failure to investigate the case and confer with Petitioner regarding trial strategy and (2) opening statements that opened the door for Avantis Parker's testimony that Petitioner was involved in Mr. Charles' murder.

Accordingly,

**IT IS ORDERED** that Petitioner's application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**;

**IT IS FURTHER ORDERED** that Petitioner is denied a certificate of appealability with respect to his sentencing claim and claim concerning the retention of counsel of his choice; however, Petitioner is granted a certificate of appealability with respect to his claim that he was denied the effective assistance of counsel due to counsel's (1) failure to investigate the case and confer with Petitioner regarding trial strategy and (2) statements that opened the door for Avantis Parker's testimony that Petitioner was involved in Mr. Charles' murder.

**IT IS FURTHER ORDERED** that Petitioner is granted leave to proceed in

forma pauperis if he decides to appeal this decision.

                                        s/ Linda V. Parker
                                        LINDA V. PARKER
                                        U.S. DISTRICT JUDGE

 Dated: September 13, 2019